UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

_____

**DARLA S. ASHCRAFT-BOETTCHER**

        **Plaintiff,**

vs.

**LIFE INSURANCE COMPANY OF NORTH AMERICA d/b/a CIGNA GROUP INSURANCE**

and

**CIGNA GROUP INSURANCE**

and

**TOYOTA MOTOR MANUFACTURING KENTUCKY GROUP LONG-TERM DISABILITY PLAN**

        **Defendants.**

Case No.:

Judge:

Magistrate Judge:

_____

## COMPLAINT

Now comes the Plaintiff, Darla S. Ashcraft-Boettcher, by and through her undersigned counsel, Robert Armand Perez, Sr. and The Perez Law Firm Co., L.P.A., and for her Complaint hereby states as follows:

### Jurisdiction and Venue

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA") and, in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). These provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an Employee Welfare Benefit Plan that, in this case, consists of group disability benefits available under a Plan that is provided to the

employees of Toyota Motor Manufacturing under the Toyota Motor Manufacturing Kentucky Group Long-Term Disability Plan (hereinafter referred to as "the policy" or "the Plan"), also a Defendant.  The Long-Term Disability Group Benefit Plan is attached hereto and incorporated as Exhibit numbers 1-40.

2. This action may be brought before this court pursuant to 28 U.S.C. § 1331 that gives the district court jurisdiction over actions that arise under the laws of the United States.

3. The ERISA statute provides at 29 U.S.C. § 1133 a mechanism for administrative or internal appeal of benefit denials.  Plaintiff Ashcraft-Boettcher has repeatedly appealed the adverse benefit decisions of Defendant Life Insurance Company of North America (hereinafter "LINA").  Defendant LINA provided her with an optional voluntary review that Plaintiff Ashcraft-Boettcher in which she was not required to participate but nonetheless, did participate and provided significant additional information that was ignored by Defendant LINA.

## Nature of Action

4. This is a claim seeking an award to Plaintiff Darla S. Ashcraft-Boettcher of disability benefits pursuant to an Employee Welfare Benefit Plan providing group disability benefits to employees of Toyota Motor Manufacturing.  This action, seeking recovery of benefits, is brought pursuant to 29 U.S.C. § 502(a)(1)(B) of ERISA, and 29 U.S.C. § 1132(a)(1)(B).  Plaintiff also seeks to enforce the right to future benefits and enjoin the Defendants to account for past benefits and pay future benefits.  29 U.S.C. § 1132(a)(3)(A) and (B).

2

## The Parties

5. Plaintiff is now disabled but was an active employee under the Plan and eligible as a qualified employee when her medical condition deteriorated and she could no longer work after approximately September 13, 2011. Plaintiff was employed by Toyota for twenty-five (25) continuous years with progressive promotions throughout this period.

6. At all times relevant hereto, the Defendant policy/Plan constituted an "Employee Welfare Benefit Plan" as defined by 29 U.S.C. § 1002(1) and while employed, Plaintiff became disabled and has coverage under the Plan as an employee because she was a participant as defined by 29 U.S.C. § 1002(7). This claim relates to benefits under the foregoing policy/Plan.

7. ERISA requires that an Employee Benefit Plan be established and maintained pursuant to a written instrument, 29 U.S.C. § 1102(a)(1).

8. The Plan is a Certificate of Insurance under which the Plaintiff, Darla S. Ashcraft-Boettcher, was a participant at the time of her disability and is attached and incorporated herein as Exhibit numbers 1-40. This Plan document sets forth the sole criteria of benefits for Plaintiff.

9. Life Insurance Company of North America d/b/a CIGNA Group Insurance is the claims administrator and underwriter of this insured Plan under Toyota Motor Manufacturing. Venue is proper in the Eastern District of Kentucky because Toyota Motor Manufacturing is located in Kentucky and Plaintiff worked and resides there. All of the relevant events contained herein occurred in the Eastern District of Kentucky.

## **Statement of Facts**

10.     Plaintiff was a full-time Group Leader and was actively engaged in employment until on or about September 13, 2011 when she ceased working because of multiple medical problems.   Due to her many illnesses and co-morbidities, Plaintiff has not engaged in any substantial, gainful activity since that time.   The job is classified at the "light" level of physical demand but the Plaintiff did occasionally operate fork lifts and tow motors in an industrial setting.

11.     Plaintiff made a claim for Long-Term Disability ("LTD") benefits under the Plan after being forced to stop work in September 2011 from her position as a Group Leader because she was disabled from, among other things, chronic pain, non-ischemic cardiomyopathy with congestive heart failure, dysrhythmia, an implanted pacemaker ICD, low ejection fraction, diabetes with diabetic neuropathy, fibromyalgia with an adequate number of trigger points to meet the objective criteria, chronic fatigue with marked dyspnea, loss of the ability to perform activities of daily living, chronic kidney disease stage three, kidney stones, high blood pressure, radiculopathy, "frozen" right shoulder, mid-back and lower back pain, pain radiating to both arms that was acute, degenerative disc disease in the cervical region, dysfunctional lumbar region with radiculopathy, segmental and somatic dysfunction in the thoracic region, swelling over L3-L4 bilaterally, swelling over L5-S1 bilaterally, loss of mobility and inability to walk for any distance requiring occasional wheelchair use, a brachial plexus injury, inability to lift or carry more than five (5) pounds, and loss of sensation in the extremities from peripheral neuropathy.

12.   Plaintiff Ashcraft-Boettcher was eligible for the payment of Long-Term Disability benefits under the LINA Plan after a fifty-two (52) weeks[1] and was paid those benefits in the amount of four thousand, five hundred, eighty-six dollars ($4,586.00) beginning September 11, 2012.  A copy of LINA's September 24, 2012 letter conveying this information is attached and incorporated as Exhibit numbers 41-42.

13.   The Plaintiff applied for Social Security Disability after LINA had agreed that she was entitled to Long-Term Disability.  Social Security Disability benefits were awarded with a decision that stated that she was disabled beginning September 12, 2011 and entitled to benefits beginning March 2012 with a payment amount at that date in the amount of two thousand, three hundred, ninety-seven dollars and forty cents ($2,397.40).

14.   Plaintiff Ashcraft-Boettcher was receiving Long-Term Disability benefits from Defendant LINA under Class 1, Option 3 coverage of the group policy that funded the disability benefits that had an elimination period of one hundred and eighty (180) days.

15.   Plaintiff Ashcraft-Boettcher used a non-attorney representative, Allsup, a company that was recommended by LINA and acting on LINA's behalf to assure that the Plaintiff received Social Security benefits from the Commissioner of Social Security to reduce the payment amount that LINA had to make to Plaintiff Ashcraft-Boettcher as a result of her receiving Social Security.  SSDI was awarded quickly, without a hearing. A copy of the Social Security Notice of Award letter, albeit redacted, is attached and

---

[1] The policy provides for a 180-day elimination period but Plaintiff's employer paid her for 52 weeks of Short-Term Disability thereby offsetting what LINA would have paid.

5

incorporated as Exhibit numbers 43-46.

16. Plaintiff Ashcraft-Boettcher was notified that she had to repay these benefits to LINA and she, in fact, did make repayment in the amount of fourteen thousand, three hundred, eighty-nine dollars ($14,389.00) that represented a six-month set-off as a result of the language in the insurance policy and the requirement she obtain Social Security.

17. A letter was sent dated September 12, 2017 by LINA to Plaintiff Ashcraft-Boettcher stating that they were unable to pay benefits beyond September 8, 2017, however, "To prevent financial hardship, additional benefits have been paid through October 7, 2017." LINA refused to consider the Social Security Award stating it had more recent information without obtaining the Social Security claim file as required by LINA's internal policies. A copy of this letter is attached and incorporated as Exhibit numbers 47-51.

18. This termination occurred after LINA had paid benefits for five (5) years and Plaintiff had not been employed for six (6) full years and the policy requirements had changed to approximate the Social Security Disability definition that Plaintiff was unable to engage in any occupation, a lower standard under which LINA paid her for over three (3) years.

19. Defendant LINA terminated the claim payment without a review by the appropriate medical specialists reviewing the multiple medical limitations, obtaining an Independent Medical Examination or a Functional Capacity Evaluation that its claim file indicates was required.

6

20.  The Plan definition of disability/disabled states:

*"The Team Member is considered Disabled if, solely because of Injury or Sickness, he or she is:*
*1. unable to perform the material duties of his or her Regular Job; and*
*2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Job.*

*After Disability Benefits have been payable for 24 months, the Team Member is considered Disabled if, solely due to Injury or Sickness, he or she is:*
*1.  unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified for based on education, training or experience, and*
*2.  unable to earn 60% or more of his or her Indexed Earnings."*

See Exhibit number 2.

21.  Defendant LINA failed to give notice as required under 29 C.F.R. § 2560.503-1(g)(1)(iii), *et seq.* and specifically failed to give the precise reason(s) for the denial of benefits, a description of the additional materials that were necessary to perfect her claim, an explanation of why such material or information was necessary, and the appropriate information regarding the steps to be taken if Mrs. Ashcraft-Boettcher wished to submit her claim for review, including the process for that review, in its letter dated September 12, 2017.   See above.

22.  Defendant LINA's failure to comply with these requirements precluded Plaintiff Ashcraft-Boettcher from having a full and fair review of her claim and tolled the closing of the appeal record.

23.  Plaintiff Ashcraft-Boettcher appealed the discontinuation of benefits herself with a letter to LINA dated January 14, 2018.   Plaintiff included multiple medical records and other supporting documents, which are too voluminous to include. She further stated in her appeal letter that she was "still awaiting additional case notes

7

from the diabetic doctor, orthopedic doctor, and urologist" and that these would be provided to LINA once she received them. A copy of this letter is attached and incorporated as Exhibit number 52.

24. Defendant LINA responded to Plaintiff's submitted appeal with a letter to her dated March 12, 2018 in which LINA stated that it was reaffirming its previous denial of benefits but allowing for a voluntary, second appeal request. This appeal decision and review relied upon an occupational medicine physician's opinion that was conclusory and without factual or medical support on complex cardiology issues for which he was not qualified. Similarly, he opined without any factual basis upon the complex orthopedic conditions and ignored the treating chiropractic physician's opinion that a Functional Capacity Evaluation was necessary. A copy of this letter is attached and incorporated as Exhibit numbers 53-57.

25. The Plan/policy required that Plaintiff be disabled from any occupation for which she was suited and the vocational reviewer stated that Plaintiff could perform the full-time position of Supervisor, Motor Vehicle Assembly, the occupation for which LINA had found she could not perform and for which it paid five (5) years of benefits.

26. This decision on Plaintiff's appeal did not consider her Social Security Award or obtain the SSDI file but made an excuse as to why it did not need to consider it.

27. Plaintiff Ashcraft-Boettcher elected to pursue the second, voluntary appeal and again submitted additional supporting records and documents to LINA from Williamstown Chiropractic Center. The treatment records themselves are too voluminous to include, however, provided herewith is a copy of the letter authored by

8

Amanda Howell Winters, D.C. and the office visit note dated January 2, 2018.  A copy of Plaintiff's August 1, 2018 appeal letter, the chiropractor's letter, and a chiropractic office note are attached and incorporated as Exhibit numbers 58-61.

28.  Defendant LINA issued a letter dated August 8, 2018 to Plaintiff Ashcraft-Boettcher acknowledging receipt of the additional chiropractic information yet maintained that it was "unable to accept this as a voluntary appeal."  LINA stated it would "need medical records in the form of office visit notes or diagnostic testing."  A copy of this letter is attached and incorporated as Exhibit number 62.

29.  Defendant LINA sent another letter to Plaintiff Ashcraft-Boettcher dated September 12, 2018 to "acknowledge the receipt of your request for a voluntary appeal review," stating a new Case Manager would be assigned and be in contact soon, and that a final decision would be rendered within forty-five to ninety days.  A copy of this letter is attached and incorporated as Exhibit number 63.

30.  LINA issued a letter to Plaintiff Ashcraft-Boettcher dated October 10, 2018 acknowledging receipt of the request to appeal the adverse benefit determination, providing contact information for the newly assigned Case Manager, and tolling the appeal deadline to December 9, 2018 as Plaintiff Ashcraft-Boettcher stated in a telephone call with LINA that she wished to submit additional supporting evidence.  A copy of this letter is attached and incorporated as Exhibit numbers 64-65.

31.  LINA followed up with Plaintiff Ashcraft-Boettcher with a letter dated November 8, 2018 stating that LINA had not yet received the additional supporting medical and other evidence Plaintiff previously asserted she was going to submit on behalf of her claim.  Various time lines were again reiterated.  A copy of this letter is

attached and incorporated as Exhibit numbers 66-67.

32. Plaintiff Ashcraft-Boettcher submitted additional documents and information on behalf of her claim to Defendant LINA along with a letter dated November 19, 2018. Such information included, but was not limited to, medical records from Williamstown Chiropractic Center and Dr. Sterneberg Primary Care. The records are too voluminous to include in their entirety, however, included herewith is another copy of the letter written by Amanda Howell-Winters, D.C. of Williamstown Chiropractic Center and a Physical Ability Assessment form completed by Dr. Steven B. Sterneberg indicating Plaintiff had the ability to perform most physical activities "zero" amount of time during a day. Dr. Sterneberg further noted that Plaintiff Ashcraft-Boettcher "has marked dyspnea on walking short distances, stair or inclines. She has an inplanted pacemaker/defibrillator, documented low ejection fraction by echo . . . ." Dr. Amanda Howell-Winters opined that "she exhibits 'severe disability' with regard to both the lower back (44%) and the neck (44%). This level of disability, when considering all of her conditions as a whole, is such that she cannot perform the necessary functions of even a less than sedentary occupation on a regular basis, 8 hours per day." A copy of the letters and medical form is attached and incorporated as Exhibit numbers 68-72.

33. On December 7, 2018 Defendant LINA sent another letter to Plaintiff Ashcraft-Boettcher again requesting the additional medical information Plaintiff had previously advised she was going to be submitting. LINA requested receipt of the information by December 9, 2018. Apparently, Plaintiff's submission crossed in the mail as Plaintiff had already provided LINA with the additional

10

information/documentation. A copy of this letter is attached and incorporated as Exhibit numbers 73-74.

34. Defendant LINA issued a final decision letter to Plaintiff Ashcraft-Boettcher dated February 19, 2019 again upholding the prior decision to deny benefits and further stating that "you have exhausted all administrative levels of appeal. No further appeals will be considered." This denial used a medical director of cardiology and one in occupational medicine. They ignored Dr. Amanda Howell Winters' evidence on the orthopedic limitations completely and stated that a telephone call purportedly to Dr. Sterneberg had him quoted as giving opinions that are completely contraindicated by the written statements in his Physical Ability Assessment based on his examination of October 17, 2018 and this "telephone call" is not reliable, substantive evidence. A copy of this letter is attached and incorporated as Exhibit numbers 75-80.

35. Plaintiff Ashcraft-Boettcher retained counsel, Robert Armand Perez, Sr. and The Perez Law Firm Co., L.P.A., who forwarded a letter of representation and appeal to Defendant LINA requesting multiple documents and items of information dated May 30, 2019. Counsel also requested that LINA consider granting Plaintiff another voluntary appeal review. A copy of this letter is attached and incorporated as Exhibit numbers 81-86. Postal records indicate this letter was signed for by a representative of LINA on June 3, 2019. A copy is attached and incorporated as Exhibit numbers 87-88.

36. Defendant LINA responded with a letter dated June 14, 2019 and produced some of the requested items of documentation, answered some of Plaintiff's counsel's questions, and produced the alleged claim file. Defendant LINA also stated that "your client's appeal attempts were exhausted as of our February 19, 2019 decision

11

letter.  At this time, we will not be able to consider any additional appeals *(sic.)* attempts."   A copy of this letter is attached and incorporated as Exhibit numbers 89-90.

## COUNT I

37. Plaintiff incorporates as if fully restated herein the allegations in paragraphs 1 through 36 of the Complaint.

38. Defendant LINA has breached its fiduciary duty to Plaintiff by failing to exercise the statutorily required duty of care and prudence, failing to administer the Plan solely in the interests of the participants and beneficiaries as required under 29 U.S.C. §1104(a)(1), and by denying benefits to the Plaintiff contrary to the law, applicable regulations, and terms of the Plan.

39. The language of the Plan document does not give deference to the decisions of LINA's claim adjusters.  Additionally, they are structurally conflicted as employees of LINA and LINA also pays the benefits.  Therefore, this matter must be reviewed under a *de novo* standard of review.

40. LINA is required to analyze the claims and the appeals with care and prudence solely in the claimant's interest according to the terms of the Plan, considering the combination of Plaintiff Ashcraft-Boettcher's physical inabilities and co-morbidities and all of the conditions that result in limitations and the effect of their interactions that preclude Mrs. Ashcraft-Boettcher from engaging in any occupation.

41. Defendant LINA has failed its duty of care to investigate Plaintiff Ashcraft-Boettcher's claim thoroughly, and Defendant LINA has made several material mistakes of fact.  LINA has arbitrarily ignored substantial evidence Plaintiff has submitted, has arbitrarily and capriciously refused to consider the evidence and

opinions of the treating physicians, and failed to perform a Functional Capacity Evaluation. The vocational reviews are conclusory and without any supporting evidence. Therefore, Defendant has failed to provide a full and fair review.

42. Additionally, Defendant LINA has failed to provide a full and fair review by not conducting its own physical examination of the Plaintiff, nor hiring competent paper reviewers in the required fields of medicine to render opinions and the reviewer did not examine all of the submitted medical and other supporting evidence and made unqualified conclusory statements on the Plaintiff's complex medical limitations without stating any factual basis on which they relied.

43. Therefore, this court should perform a full *de novo* review of this decision and the evidence in the claim file and may not abrogate its statutory duty to do so because a plenary review is required. Failure to perform a *de novo* review would deprive Plaintiff of her constitutional rights in violation of the U.S. Constitution, Article III.

44. Defendant LINA has failed to comply with the procedural requirements of ERISA. Specifically, the denial of payment of benefits by Defendant LINA did not comport with the requirements of C.F.R. § 2560.503-1 *et seq.* that specifies the procedural requirements for the claim review process and specifically requires that the claim administrator who denies benefits provide the claimant with a notice that is specific and enumerated in this regulation and moreover, requires that the initial denial of benefits to the Claimant/Plaintiff inform the Plaintiff of what is necessary to perfect her claim, and Defendant LINA has failed to comply with the regulations and has failed to follow its own Plan language.

45. LINA still wrongfully denies benefits and because the Defendant has breached its duty to administer the Plan with due care and discontinued benefits to Plaintiff Darla S. Ashcraft-Boettcher without a reasonable basis and because Plaintiff has been unable to work for eight (8) years and her condition has worsened and LINA has no evidence that there was a change of her condition that constituted improvement to allow her to return to full-time gainful employment that would achieve recommendation of sixty percent (60%) of her prior indexed salary, Mrs. Ashcraft-Boettcher is entitled to an order to have her benefits reinstated.

46. The disability Plan under which the Plaintiff, Darla S. Ashcraft-Boettcher, was a participant at the time of her disability is attached herein as Exhibit numbers 1-40. This document sets forth the sole criteria for benefits for the Plaintiff.

47. Plaintiff is entitled to these benefits. They are due and owing to the Plaintiff in an amount not yet ascertainable, and the Plaintiff seeks the payment of these benefits under 29 U.S.C. § 1132(a)(1)(B) with an order to reinstate until she is no longer disabled.

## COUNT II

48. Plaintiff incorporates as if fully restated herein the allegations in paragraphs 1 through 47 of the Complaint.

49. ERISA mandates that an Employee Benefit Plan shall be established and maintained pursuant to a written instrument, 29 U.S.C. § 1102(a)(1).

50. The Plan/policy that is attached as Exhibit numbers 1-40 is the sole basis of the disability benefits that are the subject of this litigation.

51. Under the terms of that Plan/policy, there is a provision that provides for the reduction in payment of monthly benefits for "other benefits."

52. It is the industry policy as well as that of Defendant LINA to calculate the other benefits based upon the Social Security Administration's award of benefits initiating on the first month on which the benefits are made payable under the award of the Social Security Commissioner of disability benefits.

53. The Plaintiff was awarded benefits in March of 2012.

54. As a result, LINA calculated her repayment amount for September of 2012 through March of 2013 in the amount of fourteen thousand, three hundred ninety-nine dollars ($14,399.00) based upon the Social Security Award of two thousand, three hundred ninety-seven dollars and forty cents ($2,397.00) that was the initial monthly payment awarded by the Commissioner of Social Security.

55. It is LINA's policy and the industry standard to freeze this amount throughout the period of payment of benefits and the records of LINA indicate that it did, in fact, freeze the benefit amount but inaccurately calculated the reduction of benefits.

56. Instead of reducing benefits by two thousand, three hundred ninety-seven dollars and forty cents ($2,397.40) starting in March of 2012 as it did in the demanded repayment, the subsequent benefit payments that were made from March 2012 forward were miscalculated and her benefits were reduced by two thousand, four hundred dollars ($2,400.00) per month that underpaid her the amount of two dollars and sixty cents ($2.60) from March 2012 through termination of the payment of benefits in October of 2017.

57. In breach of its fiduciary duty of care and to administer the Plan solely for the benefit of the Plaintiff as required by 29 U.S.C. § 1104(a), *et seq.*, the Defendant has miscalculated and incorrectly paid benefits for five and a half (5.5) years from March 2012 through the termination of benefits in October of 2017.

58. Whether intentionally or unintentionally, this error in payment is a prohibited self-dealing and the failure to properly pay and/or retain this amount and derive income for its own benefit, LINA has violated the statutory restrictions. This underpayment was a violation of the anti-inurement rule and violates the terms of the Plan/policy.

59. Although the miscalculation occurred from March of 2013 through October of 2017, it occurred each and every month during that period of time on a continuing basis and was not one specific injury from March of 2013 but redundant, persistent, and continuous. This failure to properly pay under the terms of the Plan was not obvious and was not discovered until counsel obtained the claims file and reviewed it on or about July 17, 2019. This is a separate and distinct injury from LINA's wrongful termination of benefits.

60. The Plaintiff requests the court order an equitable accounting and repayment of the understated benefits with pre-judgment interest and other such relief as necessary to make her whole under the principles of equity pursuant to 29 U.S.C. § 1132(a)(3).

**WHEREFORE,** Plaintiff Darla S. Ashcraft-Boettcher prays for the following relief:

A. That the court enter judgment in Plaintiff Ashcraft-Boettcher's favor and against the Defendants and that the court order the Defendant LINA to account for and pay disability income benefits to Plaintiff Ashcraft-Boettcher in an amount equal to the amount of benefits under the policy to which Mrs. Ashcraft-Boettcher is entitled and order reinstatement of benefits wrongfully terminated;

B. That the court order the Defendant LINA to pay Plaintiff's pre-judgment interest on all benefits that have accrued prior to the date of judgment and enter judgment accordingly, and that the court reserve jurisdiction to enforce the equitable decree;

C. The court should order all equitable relief such as surcharge, reformation, and disgorgement or other appropriate equitable relief for the underpayment of benefits;

D. That the court declare Darla S. Ashcraft-Boettcher's rights under the ERISA Plan/policy, the ERISA statute, and the applicable Kentucky insurance laws and order Defendants to continue paying Plaintiff Ashcraft-Boettcher's benefits until such time as the court decides that she meets the policy/Plan conditions for discontinuance of benefits and this is perfected by an order of this court;

E. That the court award Plaintiff her attorney's fees pursuant to 29 U.S.C. § 1132(g), and

F. That Plaintiff recover any and all other relief to which she may be entitled, as well as the costs of suit.

Dated this 31st day of July, 2019 at Cincinnati, Ohio.

                    Respectfully submitted,

By:    *s/ Robert Armand Perez, Sr.*
Robert Armand Perez, Sr., Esq. (OH 0009713)
THE PEREZ LAW FIRM CO., L.P.A.
6921 Fox Hill Lane
Cincinnati, OH   45236-4905
Telephone:    (513) 891-8777
Facsimile:    (513) 891-0317
E-mail:    rperez@cinci.rr.com
**ATTORNEY FOR PLAINTIFF,
DARLA ASHCRAFT-BOETTCHER**